# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

Kevin Czech, (K90539), )
)
          Petitioner, )
)     Case No. 14 C 2012
    v. )
)     Judge Robert W. Gettleman
)
Randy Pfister, )
)
        Respondent. )

## MEMORANDUM OPINION AND ORDER

Petitioner Kevin Czech, a prisoner at the Pontiac Correctional Center, brings this *pro se* habeas corpus petition pursuant to 28 U.S.C. § 2254 challenging his murder and unlawful possession of a firearm convictions from the Circuit Court of Cook County. Petitioner argues: (1) appellate counsel was ineffective for failing to argue on appeal that the trial court denied his Sixth Amendment right to counsel of his choice; (2) his due process rights were violated when the jury instructions included an invalid type of murder offense and the jury returned a general verdict; and, (3) ineffective assistance of trial counsel for: (a) failing to request various jury instructions, and (b) failing to prevent the jury from learning that the shooter had been convicted of murder.

For the reasons discussed below, the court rejects petitioner's ineffective assistance of counsel arguments (Claims One and Three), but instructs the parties to provide additional briefing regarding the due process issue (Claim Two). The court concludes that there was a due process violation at petitioner's trial, but believes additional briefing is required as to whether this error had a "substantial and injurious effect or influence" on the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1995). Consequently, the court recruits Kenneth A. Kroot, Jenner & Block

LLP, 353 N. Clark Street, Chicago, IL 60657, to represent petitioner pursuant to counsel's trial bar obligation under Local Rule 83.11(g).

## A.    Background

The following facts are drawn from the Illinois Appellate Court's opinion on direct appeal. *Illinois v. Czech*, No. 1-02-0982 (Ill. App. Ct. Mar. 31, 2004) (Rule 23 Order).[1]   The state court findings are presumed correct, and petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. *Brumfield v. Cain*, 135 S. Ct. 2269, 2282 n.8 (2015) (citing 28 U.S.C. 2254(e)(1)).   Petitioner provides no evidence to rebut the state court findings.

Petitioner was convicted of orchestrating a gang related drive-by shooting in the Avondale neighborhood on the Northwest side of Chicago.   The shooting occurred at approximately 8:00 p.m. on September 24, 1999.   [10-4 at 43].   The victim, 14-year-old Alonzo Zuniga, was an innocent bystander, unrelated to a gang.   *Id* at 43-44.   The shooting occurred in an area claimed by the Latin Kings street gang.   *Id*. at 44.   Petitioner was a member of the Maniac Latin Disciples street gang, a rival of the Latin Kings.

Petitioner was with Roberto Mejia, Marquis Falls, and Nancy Malaves in a grey Buick LaSabre when the shooting occurred.   *Id*. at 46.   Malaves, who was then 15, was dating Mejia, 18 years old.   *Id*.   Petitioner was 20 years old, and Falls was 13.   *Id*. at 48.

---

1 The state appellate court opinion on direct appeal provided by respondent is missing the final 13 pages.   Respondent cites to the full state court opinion in his answer without any discussion of the missing 13 pages.   This suggests that the missing pages of the state court opinion in Exhibit B were omitted due to a clerical error.   Fortunately, the full state court opinion is included as an attachment to the postconviction petition that was included in the record.   [10-4 at 42-74].   The court has used this full copy of the state court opinion.

According to Malaves, the original plan for the evening was for her and Mejia to have a double date at the movies with petitioner and petitioner's girlfriend. *Id*. at 46. Malaves and Mejia picked up petitioner, who informed them that they would "cruise by the Kings," instead of going to the movies. *Id*. Petitioner also instructed that they should pick up Falls. *Id*. After getting Falls, petitioner again said they would go "cruising by some Kings." *Id*.

Falls was a "pee wee" in the Maniac Latin Disciples because, at age 13, he was too young to be a full member. *Id*. at 48. As a "pee wee," Falls could earn his "stars" by performing tasks for older members such as holding guns for them. *Id*. A month before the shooting, petitioner gave Falls a .357 revolver to hold for the gang. *Id*. Falls kept the gun hidden in an alley behind a garbage can, and would check on the gun daily. *Id*.

On the evening of the murder, petitioner, Mejia, and Malaves drove Falls to the alley to retrieve the gun. *Id*. After Falls returned to the car with the gun, Mejia was driving, Malaves was in the front passenger seat, and petitioner and Falls were in the backseat. Petitioner told Falls that either he or Falls would shoot at the Latin Kings. *Id*. at 48-49. If the Latin Kings were on petitioner's side of the car, petitioner would do the shooting, while Falls would be the triggerman if the Latin Kings were on his side. *Id*. at 49. Petitioner also instructed Falls to switch seats with Malaves and sit in the front passenger seat because the rear window did not fully roll down on Falls' side of the car. *Id*.

The group then drove to the area where the Latin Kings were located. A group of approximately 15 people, including the victim Zuniga, were standing on the sidewalk on the passenger (Falls's) side of the car. *Id*. at 44. Petitioner said, "King love" to the group and began

making Latin King gang signs with his hands. *Id.* The group of men shouted back "King love," and returned the gang signs. *Id.*

The car drove around the block and went past the group of men for a second time. This time, petitioner told Malave to "close [her] ears, she [was] gonna hear something loud." *Id.* At the same time, petitioner handed the gun to Falls and instructed him to shoot at the group of Latin Kings. *Id.* Falls fired five shots out of the car window. *Id.* One of the bullets killed Zuniga.

Four days after the shooting, the police arrested a different man, Daniel Garcia, for the shooting. *Id.* at 49. Garcia, who knew petitioner and the others involved, told the police that he had heard petitioner admit to his involvement in the shootings. *Id.* Garcia's information led the police to bring petitioner, Mejia, Malaves, and Falls in for questioning. Petitioner confessed to the shooting in a statement to the police, and in a videotaped statement made to an Assistant State's Attorney ("ASA"). *Id.* at 51.[2]

Both Falls and Malaves testified on behalf of the prosecution at trial. The jury was informed that Falls was tried as a juvenile, and found guilty of first degree murder for his participation in the murder. *Id.* at 43. The jury also heard from Gina Phee and Carlos Diaz. Phee and Diaz were standing with the group on the sidewalk during the drive by shooting. *Id.* at 43-45.

---

2 Chicago Police Department Detective Barbara Healy, who obtained petitioner's first oral confession, related the confession during her in-court testimony. It appears that Detective Healy did not attempt to record the first confession. Following petitioner's first confession, a second confession, which was tape-recorded, was obtained by an ASA. The tape-recorded confession was played for the jury, but it was not transcribed in the trial transcripts. The state opinion on direct appeal states that the video tape of the second confession was part of the record on appeal. However, respondent did not file a copy of the video in the present habeas corpus record. Regardless, the state appellate court opinion states that petitioner confessed to the detective, and a second time in a recorded videotape statement given to the ASA. Petitioner does not challenge these facts or otherwise attempt to challenge the presumption of correctness of these findings.

At the completion of the trial, the jury found petitioner guilty. He was sentenced to 42 years of imprisonment. Petitioner completed his direct appeal, and postconviction proceedings in the Illinois state courts. He now proceeds with a habeas corpus petition in this court.

**B.    Petitioner's Claims**

### 1.    Claim One:   Ineffective Assistance of Appellate Counsel for Failing to Raise a Claim Regarding Disqualification of Trial Attorney, William Murphy

Petitioner argues that the state court violated his constitutional right to counsel of his choice when it disqualified his trial attorney, William Murphy. He concedes the disqualification issue was not raised on direct appeal, but argues that his appellate counsel was ineffective for failing to raise the issue on direct appeal. Petitioner further concedes that he failed to properly preserve the ineffective assistance of counsel claim in his postconviction proceeding, but blames this second default on ineffective assistance of his postconviction trial counsel.

As to the underlying facts, petitioner's parents retained Murphy and a second attorney, Michael Bianucci, to represent petitioner prior at trial. *Illinois v. Czech*, No. 1-11-2910, 2013 WL 1227120, at *1 (Ill. App. Ct. Mar. 26, 2013).[3]   Murphy was also representing Daniel Garcia in an unrelated matter. *Id*.   Garcia was initially a suspect in the shootings before Garcia identified petitioner and his associates to the police. Murphy also advised Garcia regarding petitioner's case. Murphy told Garcia to "take the Fifth Amendment and see what the state would do to help him" if called to testify in petitioner's case. *Id*.   Murphy did not intend to question Garcia, instead having Bianucci examine Garcia at trial. *Id*.

---

3 The transcript of the pretrial proceedings are not included in the record. The court has relied upon the state appellate court's statement of facts. Petitioner does not suggest that the state court's statement of facts are inaccurate.

The trial court explored the conflict prior to petitioner's case going to trial. Both Murphy and petitioner were willing to waive the conflict. *Id*. However, the trial court found a "*per se* conflict" that could not be waived and disqualified Murphy from representing petitioner. *Id*. With Murphy disqualified, petitioner proceeded with his other attorney, Bianucci, representing him through trial.

Garcia testified as a prosecution witness at trial. [10-2 at 19]. He said that petitioner confessed to the shooting to him the day after it occurred. [*Id*. at 33].

Following his conviction, petitioner was represented by a Cook County assistant public defender for his direct appeal. The appellate attorney did not raise the issue of Murphy's disqualification. [10-2 at 198-245].

Petitioner retained new attorneys from the law firm of Kathleen T. Zellner & Associates for his postconviction proceedings. The original counseled postconviction petition raised, among other claims, that petitioner's constitutional right to the counsel of his choice was violated by Murphy's disqualification. [10-4 at 40].

Petitioner later supplemented the postconviction petition arguing that the appellate counsel on direct appeal was ineffective for failing to raise a different issue --- that Bianucci suffered from the same conflict of interest as Murphy. [10-4 at 28-36]. Bianucci was allegedly a member of the same firm as Murphy. Postconviction counsel argued that Murphy's conflict was imputed to Bianucci, and that the appellate attorney was ineffective for failing to raise this issue on direct appeal. *Id*.

The postconviction petition proceeded to a hearing. At the beginning of the hearing, petitioner's counsel explained that he had concluded that it was best to pursue only the imputed

conflict of interest claim, and explicitly abandoned the denial of counsel of choice issue. [10-6 at 2-3]. Following the hearing, the trial court denied the conflict of interest claim, holding that Murphy and Bianucci were not members of the same law firm. [10-6 at 146]. The state trial court concluded that they were independent lawyers in a multi-unit professional complex, meaning that Murphy's conflict could not be imputed to Bianucci. *Id*.

On postconviction appeal, petitioner was represented by new attorneys, the Office of the State Appellate Defender. Petitioner's postconviction attorneys once again shifted course by arguing that his postconviction trial attorneys were ineffective in failing to argue that appellate counsel on direct appeal was ineffective for failing to argue that the trial court denied petitioner his right to counsel of his choice. The appellate court rejected the claim, explaining that it would not reach the counsel of choice issue because there is no right to effective assistance of trial counsel in a postconviction proceeding when, as in this case, postconviction counsel is privately retained. [10-7 at 32]. Petitioner's petition for leave to appeal was denied by the Illinois Supreme Court, ending his postconviction proceedings. *Illinois v. Czech*, No. 116028, 996 N.E.2d 18 (Ill. Sept. 25, 2013) (Table).

As previously mentioned, petitioner's present claim is ineffective assistance of appellate counsel on direct appeal for failing to argue that the trial court denied him his Sixth Amendment right to counsel of his choice. Respondent argues, and petitioner concedes, that the claim is procedurally defaulted because it was not properly preserved in the state courts. Petitioner counters that his postconviction attorney's failure to properly preserve the claim should excuse the default.

To exhaust the claim, petitioner had to fairly present the claim before each and every level of the state courts, including through a petition for leave to appeal in the Supreme Court of Illinois. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Lewis v. Sternes*, 390 F.3d 1019, 1025-26 (7th Cir. 2004). Petitioner did mention the denial of his choice of counsel claim in his original postconviction petition in the state court, but his retained postconviction counsel abandoned the claim. The state appellate court on postconviction review also refused to reach the choice of counsel claim when it was reasserted on appeal because it would not excuse the alleged default by postconviction counsel. As petitioner concedes, the record demonstrates that petitioner defaulted his choice of counsel claim.[4]

Petitioner must excuse the default under either cause and prejudice, or fundamental miscarriage of justice. Regarding cause and prejudice, cause is an "'objective factor, external to [petitioner] that impeded his efforts to raise the claim in an earlier proceeding.'" *Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013) (quoting *Smith v. McKee*, 596 F.3d 374, 382 (7th Cir. 2010)). Examples of cause include: (1) interference by officials making compliance impractical;

---

4 The fact that petitioner raised other unrelated ineffective assistance of counsel arguments on direct appeal and in his postconviction proceeding does not satisfy the exhaustion requirement for this claim. Although ineffective assistance of counsel is a single claim, *Pole v. Randolph*, 570 F.3d 922, 934 (7th Cir. 2009) (citing *Peoples v. United States*, 403 F.3d 844, 848 (7th Cir. 2005)), petitioner must raise the particular factual basis for each aspect of the alleged ineffective assistance of counsel to preserve the respective argument. *Pole*, 570 F.3d at 935 (citing *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007)). "A bare mention of ineffective assistance of counsel is not sufficient to avoid a procedural default; [petitioner] must have 'identified the specific acts or omissions of counsel that form the basis for [his] claim of ineffective assistance.'" *Johnson v. Hulett*, 574 F.3d 428, 432 (7th Cir. 2009) (quoting *Momient-El v. DeTella*, 118 F.3d 535, 541 (7th Cir. 1997)). "Furthermore, petitioner cannot argue one theory [of ineffective assistance of counsel] to the state courts and another theory, based on different facts, to the federal court." *Johnson*, 574 F.3d at 432 (citing *Everett v. Barnett*, 162 F.3d 498, 502 (7th Cir. 1998)).

(2) the factual or legal basis was not reasonably available to counsel;[5] or (3) ineffective assistance of counsel. *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (citing *McCleskey v. Zant*, 499 U.S. 467 (1991)). Petitioner raises the third ground by arguing ineffective assistance of postconviction counsel under *Martinez v. Ryan*, 132 S. Ct. 1309 (2012).

The general rule is there is no constitutional right to effective assistance of counsel in a postconviction proceeding, and therefore ineffective assistance by postconviction counsel cannot excuse a procedural default. *Coleman v. Thompson*, 501 U.S. 722, 757 (1991); *Howard v. O'Sullivan*, 185 F.3d 721, 725 (7th Cir. 1999). There is, however, a narrow exception to this general rule.

Under *Martinez*, and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), "'a procedural default will not bar a federal habeas corpus court from hearing a substantial claim of ineffective assistance at

---

[5] Petitioner does not attempt to excuse the procedural default by arguing that the legal basis of the claim was unavailable to appellate counsel on direct appeal. *See Reed v. Ross*, 468 U.S. 1, 16 (1984) ("[W]here a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable state procedures."); *McKinley v. Butler*, 809 F.3d 908, 912 (7th Cir. 2016). Because this argument is not raised, petitioner has forfeited it. *United States ex rel. Bell v. Pierson*, 267 F.3d 544, 555 n.6 (7th Cir. 2001).

Beyond the forfeiture, the question of whether the legal basis of the claim was available to appellate counsel is relevant because petitioner cites to *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006), in support of his claim. *Gonzalez-Lopez* holds that the denial of the right to choice of counsel is a structural error. *Gonzalez-Lopez* was decided a year and half after the completion of petitioner's direct appeal. *Illinois v. Czech*, No. 98463, 823 N.E.2d 970 (Ill. Oct. 6, 2014) (Table) Because alleged ineffective assistance of appellate counsel occurred on direct appeal, *Gonzalez-Lopez* was not decided when the alleged ineffectiveness occurred.

However, petitioner's claim is not that his appellate attorney was ineffective for not raising the structural issue. Instead, his claim is ineffective assistance for failing to raise the disqualification of his attorney resulting in the denial of the counsel of his choice. The legal basis of this claim was available to petitioner's appellate attorney when his direct appeal was pending. *Wheat v. United States*, 486 U.S. 153, 159 (1988) (discussing constitutional right to choice of counsel).

trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'" *Trevino*, 133 S. Ct. at 1921 (quoting *Martinez*, 132 S. Ct. at 1320). Presently *Martinez*, *Trevino*, and a third case, *Maples v. Thomas*, 132 S. Ct. 912 (2012), are the only cases from the Supreme Court where ineffective assistance of postconviction counsel has excused the default of an underlying claim. However, all three cases involved the default of an underlying claim of ineffective assistance of trial counsel. The Supreme Court has never held that ineffective assistance of postconviction counsel can excuse the procedural default of an underlying ineffective assistance of appellate counsel claim.

Petitioner argues that *Martinez* should be expanded to his situation of procedural default of an ineffective assistance of appellate counsel claim.[6] Although neither the Supreme Court nor the Seventh Circuit has directly decided the question of whether *Martinez* can be expanded to cover an underlying ineffective assistance of appellate counsel claim, the court concludes that it must reject petitioner's argument to extend *Martinez*.

The Supreme Court emphasized that the exception recognized in *Martinez* is a "limited exception," and applies only to a default that occurs in the "first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial." *Martinez*, 132 S. Ct. at 1320. Although the Seventh Circuit has not ruled on the issue, the majority of Circuits have concluded

---

6 The Supreme Court has not addressed whether *Edwards v. Carpenter*, 529 U.S. 446 (2000), applies to *Martinez*. *Edwards* holds that an ineffective assistance of counsel claim used to excuse the procedural default of an underlying claim is itself a claim that can be procedurally defaulted. 529 U.S. at 453. The ineffective assistance of counsel claim must be properly exhausted before the state courts to qualify as a cause to excuse a procedural default. The court does not need to consider whether *Edwards* is applicable to the *Martinez* situation because petitioner complied with *Edwards* by raising the ineffective assistance of postconviction counsel in his appeal and petition for leave to appeal on postconviction review.

that the *Martinez* exception to *Coleman* cannot be extended to excuse defaults for claims other than ineffective assistance of trial counsel. *Reed v. Stephens*, 739 F.3d 753, 778 n.16 (5th Cir. 2014); *Hodges v. Colson*, 727 F.3d 517, 531 (6th Cir. 2013); *Dansby v. Hobbs*, 766 F.3d 809, 833 (8th Cir. 2014); *Banks v. Workman*, 692 F.3d 1133, 1148 (10th Cir. 2012).[7] The Sixth Circuit's decision in *Hodges v. Colson*, a leading case for this position, explains: "The [Supreme] Court in *Martinez* purported to craft a narrow exception to *Coleman*. We will assume that the Supreme Court meant exactly what it wrote: '*Coleman* held that an attorney's negligence in a postconviction proceeding does not establish cause, and this remains true except as to initial-review collateral proceedings for claims of ineffective assistance of counsel at trial.'" 727 F.3d at 531 (citing quoting 132 S. Ct. at 1316). Only the Ninth Circuit has gone the other way, holding that *Martinez* can be applied to excuse a procedural default of an ineffective assistance of appellate counsel claim. *Ha Van Nguyen v. Curry*, 736 F.3d 1287, 1293 (9th Cir. 2013). This court agrees that *Martinez* does not apply to this case.

The Supreme Court instructs that the lower federal courts must apply its rulings (in this case, *Coleman*), even when a subsequent Supreme Court ruling (*Martinez*) has narrowed the first case's rationale. "If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the [lower federal court] should follow the case

_____

7 In *Nash v. Hepp*, 740 F.3d 1075, 1079 (7th Cir. 2014), the Seventh Circuit explained that the *Martinez* rule is limited to excuse a defaulted underlying claim of ineffective assistance of trial counsel, but *Nash* did not consider whether *Martinez* could be extended to other situations such as a defaulted ineffective assistance of appellate counsel claim as petitioner argues.

In *Long v. Butler*, 809 F.3d 299 (7th Cir. 2015), *vacated and reh'g en banc granted*, No 13-3327, 2016 WL 1621711 (7th Cir. Apr. 20, 2016), the Seventh Circuit rejected the argument petitioner is making and joined the majority of Circuits holding that *Martinez* could not be applied in a situation of procedurally defaulted ineffective assistance of appellate counsel claim. However, the panel opinion in *Long* was vacated and *en banc* argument was ordered on an unrelated matter.

which directly controls, leaving to this court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/American Exp., Inc.*, 490 U.S. 477, 484 (1989).

This court must follow *Coleman* until the Supreme Court instructs otherwise, and expanding *Martinez* to a new situation as petitioner argues would have the improper effect of reducing *Coleman* beyond *Martinez's* narrow exception. Only the Supreme Court can hold that *Coleman* no longer controls the present situation of a defaulted ineffective assistance of appellate counsel claim. *See Gore v. Crews*, 720 F.3d 811, 817 (11th Cir. 2013) (per curiam) ("Unless and until the Supreme Court overrules the limitations it placed on its *Martinez* decision, we are bound to respect and apply them.").

Two additional points to address before proceeding. First, petitioner argues that *Martinez* applies because the underlying claim of denial of his constitutional right to counsel of his choice involves his Sixth Amendment right. However, as explained above, the Supreme Court applied *Martinez* only to a defaulted claim of ineffective assistance of trial counsel, and this court has no authority to extend *Martinez* beyond that claim. The Supreme Court has not applied *Martinez* to any other Sixth Amendment claims.

Second, petitioner points out that the Supreme Court in *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006), held that the wrongful denial of choice of counsel is a structural error. But this does not help petitioner. All errors, including structural errors, must still be properly preserved in the state courts to avoid procedural defaulted. *Ward v. Hinsley*, 377 F.3d 719, 725 (7th Cir. 2004) (citing *Coleman*, 501 U.S. at 750; *Hatcher v. Hopkins*, 256 F.3d 761, 764 (8th Cir. 2001)). Additionally, the claim at issue is ineffective assistance of appellate counsel, which is not a structural error claim.

In sum, *Martinez* does not apply to petitioner's claim. He cannot demonstrate cause and prejudice to excuse his procedural default.

This leaves petitioner with the fundamental miscarriage of justice (actual innocence) gateway to excuse his default. To show actual innocence to defeat a default, petitioner must demonstrate that "'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggins v. Perkins*, 133 S. Ct. 1924, 1928 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). This is a "demanding" and "seldom met" standard. *McQuiggins*, 133 S. Ct. at 1928 (citing *House v. Bell*, 547 U.S. 518, 538 (2006)). Petitioner must present new, reliable evidence that was not presented at trial --- such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence --- to make a credible claim of actual innocence. *House*, 547 U.S. at 537 (citing *Schlup*, 513 U.S. at 324); *see McDonald v. Lemke*, 737 F.3d 476, 483-84 (7th Cir. 2013) (quoting *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) ("[A]dequate evidence is 'documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who places him out of the city, with credit card slips, photographs, and phone logs to back up the claim.'")).

Petitioner presents no new evidence to suggest he is actually innocent. Malave and Falls testified that petitioner orchestrated the shooting, and Garcia testified that petitioner confessed to him after the shooting. Petitioner also confessed to the police. The fundamental miscarriage of justice exception does not apply. The claim is procedurally defaulted and petitioner cannot excuse the default. Claim One is denied.

## 2. Claim Two: Use of General Verdict

Petitioner next argues that his murder conviction cannot stand because the jury was instructed on an impermissible felony murder theory. The trial court instructed the jury on the elements of Illinois's murder statute. 720 ILCS 5/9-1. The jury was told it should find petitioner guilty of murder if he: (1) intended to kill the victim; (2) caused great bodily harm to the victim or took an action that he knows would cause death to the victim; (3) knew that there was a strong probability of great bodily harm; or (4) the victim's death occurred during the course of committing a felony. [10-2 at 185]. The relevant felony in the instant case was aggravated discharge of a firearm. *Id*. The trial attorney did not object to felony murder instruction.

On direct appeal, petitioner argued his trial counsel was ineffective for failing to challenge the felony murder instruction. The appellate court ruled that the felony murder instruction was improper under Illinois law,[8] but concluded there was no underlying error. The jury returned a general verdict finding petitioner guilty of murder. The appellate court explained that the court presumes the jury convicted petitioner of the most serious crime charged. [10-4 at 60]. In this case, that was intentional or knowing murder. *Id*. Consequently, the state court concluded the error in the felony murder instruction was harmless because the jury convicted petitioner under the intentional or knowing murder charge instead of felony murder. *Id*. Because any error was harmless, petitioner could not raise a *Strickland* violation for counsel's failure to challenge the felony murder instruction.

---

8 Respondent claims that the state court erred in holding that the felony murder instruction violated Illinois law, but respondent concedes that the court is bound by the Illinois court's interpretation of Illinois law on this point.

Before turning to the merits, the court addresses two preliminary points. First, petitioner raised a *Strickland* claim in the state court, arguing that his attorney was ineffective for failing to challenge the return of a general verdict based on an unlawful legal theory. Despite this, both parties briefed the underlying general verdict claim, and do not evaluate the claim under *Strickland*. Thus, the court shall proceed with the claim as presented by the parties.

Additionally, the parties agree that the claim is governed by the limitations of 28 U.S.C. § 2254(d) under the Antiterrorism and Effective Death Penalty Act. This is a questionable concession by petitioner. Petitioner raised his constitutional claims in his state court briefs. However, the state court applied a state law principle that it presumed the jury convicted petitioner on the intentional murder ground, instead of the felony murder ground. The state court did not consider whether the inclusion of the felony murder ground with the use of a general verdict form resulted in a constitutional violation. This raises the question of whether the claim should actually be reviewed under 28 U.S.C. § 2243's law and justice / de novo standard instead of § 2254(d)'s contrary to, or an unreasonable application of, clearly established law from the Supreme court, standard. Regardless, as explained below, the relevant standard is a non-issue since petitioner can meet the more demanding § 2254(d) standard because the state court ruling is contrary to clearly established law from the Supreme Court.

Turning to the underlying claim, common law principles instruct that a general verdict is valid so long as it is legally supportable "on one of the submitted grounds – even though that gave no assurance that a valid ground, rather than an invalid ground, was actually the basis of the jury's action." *Griffin v. United States*, 502 U.S. 46, 49 (1991). The common law principle covers the instant case. *Id*. at 50 (explaining that the common law "validated general verdicts returned on

15

multicount indictments where some of the counts were legally defective. . . .").[9]   The state court ruling is best understood as an application of the common law, since it held that the general verdict was proper because the court presumed the jury convicted petitioner of intentional murder, instead of the unlawful felony murder ground.

The Supreme Court has recognized that the Constitution limits the common law rule. "[W]here a provision of the Constitution forbids conviction on a particular ground, the constitutional guarantee is violated by a general verdict that may have rested on that ground." *Griffin*, 502 U.S. at 53 (citing *Stromberg v. California*, 283 U.S. 359, 368 (1931)).

Petitioner argues that his conviction should be vacated under *Stromberg*.   In *Stromberg*, a general verdict "'rested on an instruction that the petitioner could be found guilty for displaying a red flag as 'a sign, symbol, or emblem of opposition to organized government, or as an invitation or stimulus to anarchistic action, or as an aid to propaganda that is of a seditious character.'" *Hedgpeth v. Pulido*, 555 U.S. 57, 60 (2008) (per curiam) (quoting 283 U.S. at 363).   The Supreme Court held that the criminalized conduct of displaying a red flag in opposition to the government, in support of anarchy or sedition was protected speech under the First Amendment.   *Id*.   The Supreme Court reversed the conviction because "'it was impossible to say under which clause of the instruction the conviction was obtained.'"   *Hedgpeth*, 555 U.S. at 60 (quoting 283 U.S. at 368).

Petitioner argues that as in *Stromberg*, it is impossible to know which clause of the instruction the conviction was obtained.   The Supreme Court in *Griffin v. United States* instructed that *Stromberg* should not be read beyond its fact pattern.   "[T]he holding of *Stromberg*, do[es]

---

9  The Illinois Supreme Court has traced back its application of the common law rule to 1828. *Illinois v. Smith*, 906 N.E.2d 529, 539 (Ill. 2009) (citing *Curtis v. Illinois*, 1 Ill. 256, 260 (1828)).

not necessarily stand for anything more than the principle that, where a provision of the Constitution forbids conviction on a particular ground, the constitutional guarantee is violated by a general verdict that may have rested on that ground." 502 U.S. at 53. *Stromberg*, as interpreted by *Griffin*, does not help petitioner because the jury in *Stromberg* was asked to convict petitioner for engaging in constitutionally protected conduct. Here, there is no constitutionally protected conduct.[10]

Although *Stromberg* is not directly on point, *Yates v. United States*, 354 U.S. 298 (1957), *overruled on other grounds by Burks v. United States*, 437 U.S. 1 (1978), is better for petitioner. *Yates* applies *Stromberg* to a challenge to a general verdict when the jury is instructed on an improper legal theory. But, the Supreme Court in *Griffin* questioned the validity of *Yates*, and referred to it as an "unexplained extension" of *Stromberg*. 502 U.S. at 56. The *Griffin* court also noted that *Yates* did not explain the reasoning supporting the extension of *Stromberg*, but questions that the Due Process Claims "is an unlikely basis." *Id.* Despite questioning *Yates*, *Griffin* did not consider whether to continue the Supreme Court's adherence to *Yates* because that question was not at issue in *Griffin*. *Id.*

The underlying legal justification for *Yates* is important to determine because *Yates* (as well as *Griffin*), unlike *Stromberg*, arose as a federal prosecution. This raises the question of

---

10 Petitioner also cites to *Flore v. United States*, 531 U.S. 226 (2001) (per curiam), *Davis v. United States*, 417 U.S. 346 (1974), and *Sandstrom v. Montana*, 442 U.S. 510 (1979), in support of his claim. However, these cases do not help him. In *Flore* and *Davis*, the Supreme Court overturned a conviction when the defendant was convicted of conduct that was later determined to be lawful conduct. *Flore*, 531 U.S. at 226; *Davis*, 417 U.S. at 346. However, petitioner's conduct of orchestrating the killing of another person is unlawful. *Flore* and *Davis* are inapplicable to petitioner's case. *Sandstrom* holds that the prosecution cannot improperly shift the burden of disproving an element of the crime charged to the defendant. 442 U.S. at 524. There was no shifting of the burden of proof in this case.

whether *Yates* is establishing a constitutional principle or involves a supervisory principle. *Griffin* does not resolve that issue. *Yates* must involve a federal constitutional principle to apply in a habeas corpus case, and it must be clearly established federal law, in order to apply under § 2254(d). *See Tenner v. Gilmore*, 184 F.3d 608, 612 (7th Cir. 1999).

Despite the uncertainty involving *Yates* caused by *Griffin*, this court is satisfied that *Yates* is clearly established federal law from the Supreme Court of the United States applicable to petitioner's case based on the Supreme Court's ruling in *Hedgpeth*, 555 U.S. 57. In *Hedgpeth*, the petitioner was convicted in a California state court pursuant to an erroneous felony murder jury instruction. 555 U.S. at 59. *Hedgpeth*, recognized that the case was governed by the principle from *Stromberg* and *Yates* that a "conviction based on a general verdict is subject to challenge if the jury was instructed on alternative theories of guilt and may have relied on an invalid one." *Id.* at 58 (citing 354 U.S. 298; 283 U.S. 359). Despite the application of *Stromberg* and *Yates* to the case, *Hedgpeth* held that the error was subject to harmless error review. 555 U.S. at 61.

Although *Hedgpeth* did not discuss *Griffin's* critique of *Yates*, the fact that *Griffin* did not overrule *Yates*, and *Hedgpeth* set forth and applied the rule from *Yates* to a § 2254 habeas corpus proceeding of a state conviction, indicates that *Yates* is clearly established federal law. *See Sorich v. United States*, 709 F.3d 670, 673 (7th Cir. 2013) ("The Supreme Court ruled in *Yates v. United States*, 354 U.S. 298 (1957), that constitutional error occurs when a jury is instructed on alternative theories of guilt and returns a general verdict that may have relied on a legally invalid one.").[11]

---

11 Respondent argues that *Hedgpeth* and *Skilling* do not apply to this case because they were decided after the state court ruling. It is true that the court, when evaluating a claim under § 2254(d), is limited to considering the clearly established federal law from the Supreme Court at the time of the relevant state court decision. *Yarborough v. Alvarado*, 541 U.S. 652, 661 (2004). However, *Yates* is clearly established federal law that was available to the state court at the time of

With the court concluding that *Yates* applies, the court must find that an error occurred with the return of the general verdict that included an improper legal theory. *See Skilling v. United States*, 561 U.S. 358, 414 (2010) (citing *Yates*, 354 U.S. at 298) ("Constitutional error occurs when a jury is instructed on alternative theories of guilt and returns a general verdict that may rest on a legally invalid theory.") (holding that conviction is flawed when indictment alleged an improper statutory ground for conviction). There is no dispute that the jury was instructed on an improper legal theory and returned a general verdict. That is constitutional error pursuant to *Yates*. The state court ruling is contrary to *Yates*. Petitioner satisfies § 2254(d) (and certainly would satisfy § 2243 if that standard is applied).

Although there is a constitutional violation, the question becomes whether petitioner is entitled to relief. As mentioned, *Hedgpeth* holds that the *Stromberg / Yates* error is subject to harmless error analysis. 555 U.S. at 61. The state court did not engage in a harmless error analysis under *Chapman v. California*, 386 U.S. 18 (1967). The state court did say there was "overwhelming evidence of defendant's guilt," but that conclusion related to whether petitioner could demonstrate prejudice under *Strickland*. [10-4 at 60]. Thus, *Brecht v. Abrahamson's*

---

its decision because *Yates* was decided in 1957. *Hedgpeth* and *Skilling*, which were decided after the state court decision, simply restate the already clearly established law from *Yates*.

The only "new" law is *Hedgpeth's* holding that the *Stromberg / Yates* error is subject to harmless error review. The court applies *Hedgpeth* even though it was decided after the state court ruling because petitioner is not arguing that the state court ruling in contrary to, or unreasonable application, of *Hedgpeth*. To the contrary, *Hedgpeth* is harmful to petitioner because it holds that harmless error is applied to a *Stromberg / Yates*. Respondent's argument that *Hedgpeth* is inapplicable is counter-intuitive because respondent needs the benefit of *Hedgpeth's* holding that harmless error should be applied. The court also appreciates that there is a potential *Teague* question regarding the application of *Hedgpeth* to petitioner's case. However, the court believes any concerns are resolved by *Hedgpeth* itself because that was a § 2254 habeas corpus case.

substantial and injurious effect standard controls the review of the claim. *Davis v. Ayala*, 135 S. Ct. 2187, 2198 (2015) (citing 507 U.S. 619, 637 (1993)); *see Sorich*, 709 F.3d at 674-75 (applying *Brecht* analysis to *Yates* error to consider whether jury would have convicted defendant under proper legal theory).

"This inquiry does not ask whether the jurors 'were ... right in their judgment, regardless of the error or its effect upon the verdict. It is rather what effect the error had or reasonably may be taken to have had upon the jury's decision.'" *Sorich*, 709 F.3d at 674 (quoting *Kotteakos v. United States*, 328 U.S. 750, 764 (1946)). "If a court is in 'grave doubt' about whether the error is harmless, meaning that, 'in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error,' the court is to treat the error as though it affected the verdict." *Sorich*, 709 F.3d at 674 (quoting *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)).[12]

Due to the importance of the issue, the court calls for additional briefing from the parties as to whether the *Yates* error is harmless under the *Brecht* standard. The court recruits Kenneth A. Kroot, Jenner & Block LLP, 353 N. Clark Street, Chicago, IL 60657, to represent petitioner pursuant to counsel's trial bar obligation under Local Rule 83.11(g).

---

12 As discussed below, trial counsel's strategy was to argue that Falls alone was responsible for the shooting, and that petitioner was an innocent bystander. This theory of the case further calls into question the basis for the jury's general verdict.

**3. Claim Three: Ineffective Assistance of Trial Counsel for Failing to Request Various Jury Instructions, and Failing to Prevent the Jury from Learning that the Shooter had been Convicted of Murder.**

Petitioner argues that his trial attorney was ineffective for failing to request an accomplice witness jury instruction, and for failing to request a lesser included offense of involuntary manslaughter or reckless conduct. Finally, petitioner argues his attorney was ineffective for allowing the jury to hear that the shooter (Falls) had been adjudicated a delinquent for murdering the victim. Because this claim was adjudicated and rejected on the merits by the state appellate court on direct appeal, the claim is governed by 28 U.S.C. § 2254(d).

Petitioner must demonstrate that the state court ruling was contrary to, or an unreasonable application of, clearly established federal law from the Supreme Court of the United States. The ineffective assistance of counsel claim is governed by *Strickland v. Washington*, 466 U.S. 668 (1984). To demonstrate ineffective assistance of counsel, petitioner must demonstrate both deficient performance and prejudice. *Premo v. Moore*, 562 U.S. 115, 121 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)). The court's review under *Strickland* is deferential, and applying *Strickland* under the AEDPA (which itself also requires deference) results in a double level of deference to the state court determination. *Knowles*, 556 U.S. at 123.

The state court ruling is not contrary to *Strickland* because the court identified the proper legal standard. [10-4 at 52]. The court's ruling is also not an unreasonable application of *Strickland*. The state court recognized that defense counsel's primary strategy at trial was to suggest that Falls was responsible for the shooting and petitioner was just an innocent bystander. This is a reasonable strategy because Falls was convicted of shooting the victim. *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citing *Strickland*, 466 U.S. at 689) ("A court considering a claim

of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance.).   The three challenged actions by counsel --- the failure to provide the accomplice instruction, failure to seek a lessor included charge, and allowing the jury to hear that Falls was convicted of murder for shooting the victim --- are all consistent with defense counsel's strategy to argue to the jury that Falls was the responsible party and petitioner was an innocent bystander.   *See McAfee v. Thurmer*, 589 F.3d 353, 355-56 (7th Cir. 2009) (holding that defense counsel provided competent representation when he argued that another person (there, a police office), had shot the victim instead of petitioner, and argued for complete acquittal instead of allowing instruction on lesser included offense).   There is no deficient performance by defense counsel.

As the state court ruling also recognized, petitioner cannot be prejudiced by defense counsel's failure to include the challenged jury instruction or an instruction on a lessor included offense.   As noted above, counsel performed well within his obligations under *Strickland* in pursuing a theory that Falls was responsible and petitioner was merely an innocent bystander. Addition of a lesser included offense instruction could confuse the jury under the unique facts of this case.   Choosing to omit such an instruction was a permissible strategic decision.   This claim is denied.

**D.      Conclusion**

Petitioner's ineffective assistance of counsel arguments (Claims One and Three) are denied.   The parties are directed to provide additional briefing regarding the due process issue (Claim Two) in accordance with the court's opinion.   The court recruits Kenneth A. Kroot, Jenner & Block LLP, 353 N. Clark Street, Chicago, IL 60657, to represent petitioner pursuant to

counsel's trial bar obligation under Local Rule 83.11(g).   On the court's own motion, respondent

Randy Pfister is terminated.   Michael Melvin, Acting Warden, Pontiac Correctional Center, is

added as respondent.   The Clerk shall also alter the case caption to *Czech v. Melvin*.   This matter

is set for a report on status and to set a briefing schedule on September 8, 2016, at 9:00 a.m., after

recruited counsel has had a chance to review this opinion and the record.


**ENTER:**          **August 3, 2016**

_____
**Robert W. Gettleman**
**United States District Judge**